IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 12-CR-30142-MJR |
| | ) |
| ANTOINE T. THOMAS, | ) |
| | ) |
|     Defendant. | ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The United States of America, by and through its attorneys, Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Daniel T. Kapsak, Assistant United States Attorney for the said district, moves this Court to deny the Defendant's Motion to Suppress Evidence and Statements. The Defendant's motion should be denied because the search warrant executed by law enforcement officials at the Defendant's residence on June 30, 2010, was supported by probable cause and not issued as the result of an illegal search.

**SUMMARY OF EVENTS OF JUNE 29-30, 2010**

The Government expects its evidence at the suppression hearing to establish the following: On June 18, 2010, Illinois State Police Special Agent Todd Goldasich received a tip from an informant who wished to remain anonymous that occupants of the residence located at 451 N. 58th Street in East St. Louis, Illinois, were in possession of multiple pounds of marijuana and firearms. That evening, Agent Goldasich drove this source past the aforementioned residence for confirmation. On June 27, 2010, Illinois State Police (ISP) Master Sergeant Joe Beliveau received information from a second confidential informant (CI) that the occupants of 451 N.58th

Street in East St. Louis, Illinois, were in possession of multiple pounds of marijuana and distributing marijuana from the aforementioned residence. Though not stated in the search warrant, this informant was deemed to be reliable based on past cooperation and was not paid.

Based on the information provided by both informants, members of the Working Against Violent Elements (WAVE) team, a joint task force designed to combat gun violence in East St. Louis, conducted surveillance on the residence located at 451 N. 58th Street during the evening of June 29, 2010. While conducting surveillance, Sergeant Beliveau observed several individuals standing on the front porch of this residence, one of whom appeared to be smoking marijuana. As a result, WAVE officers decided to approach the residence and attempt a consensual search. As these officers approached, Sergean Beliveau noticed an individual at an adjacent residence appear to throw a small bag, which heightened their suspicion of drug activity and danger to their security. WAVE officers approaching the residence at 451 N. 58th Street simultaneously noticed an individual, later identified as the Defendant, enter into the residence from the front door. As these officers, including FBI Agent Nick Manns, approached closer, they noticed a second individual on the porch communicate briefly with the Defendant inside the front doorway. The front door was then closed by the Defendant and locked. As WAVE officers arrived at the front porch, they could both smell burnt marijuana. These officers then asked two individuals located on the front porch if they had been smoking marijuana. These individuals replied affirmatively. Agent Manns then knocked repeatedly on the front door so as to further investigate the crime the officers had just witnessed and to attempt a consensual search. Agent Manns received no answer. Believing that a crime was being committed and that the Defendant may flee and discard evidence from the rear of the residence, and for their own protection, WAVE officers walked around the

side of the residence toward the rear. As they did so, officers could readily detect the smell of fresh cannabis emitting from an open window located at the rear of the residence. At no time did these officers peer into the window. WAVE officers then used a drug sniffing canine to conduct a sniff test around the curtilage of the residence, with a positive result for drugs. On these bases, WAVE officers presented a search warrant application to St. Clair County, Illinois, Judge Cason, which was promptly signed.

At approximately 12:45 a.m. on June 30, 2010, WAVE officers executed the search warrant at the Defendant's residence, which resulted in the seizure of a Stainless Steel Colt .357 Magnum firearm, a Blue Taurus .38 Special firearm, as well as marijuana and three digital scales.

## ANALYSIS

I. **WAVE officers' actions at the Defendant's residence are distinguishable from *Florida v. Jardines* and did not constitute a search.**

The actions on the part of WAVE officers in the instant matter are distinguishable from those employed by law enforcement officials in *Florida v. Jardines*, 133 S. Ct. 1409 (2013) and did not constitute a search. In *Jardines*, law enforcement officials used a drug-sniffing dog on the front porch of a home to investigate an unverified tip that marijuana was being grown inside the residence. Id. at 1411. The officers in *Jardines* did not witness any illegal activity taking place outside of Jardines' residence as they approached. Based on a positive alert from this drug-sniffing dog, the officers obtained a search warrant which yielded marijuana inside the residence. Id. In its ruling, the Supreme Court determined that these actions on the part of police officers constituted a search, noting that the officers gathered "information in an area belonging to Jardines and immediately surrounding his house…which we have held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the

area to engage in conduct not explicitly or implicitly permitted by the landowner." Id. at 1414.

The facts related to the present matter are distinguishable from *Jardines*. WAVE officers approached the Defendant's residence to further investigate a crime and attempt a consensual search. Prior to doing so, WAVE officers witnessed a person smoking marijuana on the front porch of the Defendant's residence, which was then confirmed by two individuals on the porch. As a result of witnessing this crime, as well as the Defendant's shutting and bolting the front door as the officers approached, WAVE officers reasonably believed that a crime was being committed. Thereafter, WAVE officers entered onto the side and rear of the Defendant's property. Unlike in *Jardines*, WAVE officers did not enter onto the Defendant's property to "gather information," but to prevent the commission of a crime, the escape of the Defendant, and the discarding of evidence.

**II.   WAVE officers' entry onto the rear of Defendant's property was justified by exigent circumstances and if this intrusion constituted a search it was justifiable.**

Because probable cause existed that a crime was being committed in the Defendant's residence and because exigent circumstances and legitimate law enforcement objectives existed, WAVE officers carried out a permissible investigation onto the side and rear of the Defendant's property. Exigent circumstances arise when "there is a compelling need for official action and no time to secure a warrant." *United States* v. *Rivera*, 825 F.2d 152, 156, (7th Cir. 1987); *quoting Michigan v. Taylor*, 436 U.S. 499, 509 (1978). The doctrine of exigent circumstances is properly applied to the prevention of a suspect's escape, *Minnesota v. Olson*, 110 S.Ct. 1684,1690 (1990); see also *Bogan v. City Of Chicago*, 644 F.3d 563, 571 (7th Cir. 2011), *Michigan v. Tyler*, 436 U.S at 509, as well as to the destruction or removal of evidence. *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006), *United States v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998). When reviewing a warrantless search to determine whether exigent circumstances were present, it must

be asked whether "a reasonable officer had a 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'" *Bogan,* 644 F.3d at 571, quoting *Andrews*, 442 F.3d, at 1000. This determination is not made on "'facts as an omniscient observer would perceive them,' but on the totality of facts and circumstances 'as they would have appeared to a reasonable person in the position of the officer, seeing what he saw, hearing what he heard.'"  *Bogan*, 644 F.3d at 571-572, quoting *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992).

Here, the Defendant wrongly contends that the entry onto the side and rear of the Defendant's property by WAVE officers on June 29, 2010, as well as the subsequent use of a drug sniffing dog, constituted an illegal warrantless search.   (Doc. 17).   In fact, these actions on the part of WAVE officers were in furtherance of legitimate law enforcement objectives in a high-crime area and based on their reasonable belief that the Defendant could escape from the rear of the residence, discard evidence, or present a threat to their security.   This belief was based on the totality of the facts and circumstances related to their presence at the Defendant's property that night.

Prior to conducting surveillance of the Defendant's residence on June 29, 2010, WAVE officers had learned of the presence of marijuana and firearms there from two different informants. While conducting surveillance, ISP Master Sergeant Joe Beliveau noticed several individuals on the front porch, at least one of whom appeared to be smoking marijuana.   When Sergeant Beliveau alerted his fellow officers to what he had witnessed, WAVE officers then lawfully approached the front door of the Defendant's residence to investigate a crime and to attempt a consensual search.   *Jardines*;.at 1416; *Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011).   They then witnessed the Defendant enter into the premises through the front door, followed by another

individual whispering something to the Defendant.  Moments later, the Defendant shut and bolted the door.  The totality of these circumstances, taking place in a high-crime area, led WAVE officers to reasonably conclude that probable cause of a drug-related crime was taking place inside and outside of the residence, and that the Defendant might attempt to flee from another part of the residence and discard evidence.  To prevent this occurrence and any harm to officers, and with no time to secure a warrant, WAVE officers reasonably and lawfully entered onto the areas around the side and rear of the Defendant's property.  *United States v. Davis*, 2007 WL 2220261; *United States v. Acevedo*, 627 F.2d 68, 71 (7th Cir. 1980); *Rivera*, 248 F.2d at 681.  After entering onto the rear of the Defendant's property, WAVE officers noticed a smell of fresh marijuana emanating from an open window near the rear of the residence, which was then confirmed by a drug-sniffing canine.  Because these officers lawfully entered onto all areas of the Defendant's property, their use of a drug-sniffing canine was not in violation of the Fourth Amendment.

**III.    The Search Warrant contained sufficient probable cause to search the Defendant's residence, even absent the officers' smelling fresh marijuana from the rear of the Defendant's property and use of a drug-sniffing dog.**

When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit.  *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003).  The affidavit must provide a substantial basis for determining that probable cause exists.  *Illinois v. Gates*, 462 U.S. 213, 228 (1983).  The framework for determining whether probable cause exists is the "totality of the circumstances." Id. at 238.

The totality of the circumstances provided sufficient probable cause for WAVE officers to obtain and execute a search warrant at the Defendant's residence, even prior to the officers' smelling fresh marijuana from the rear of the Defendant's property and use of a drug-sniffing

canine.  Probable cause existed by means of the information previously provided to WAVE by informants, observations made by WAVE officers in a high-crime area, as well as actions on the part of the Defendant.  Prior to their surveillance, WAVE officers had learned of the presence of marijuana and firearms at the Defendant's residence.  WAVE officers then personally conducted surveillance of the residence to seek corroboration of drug-related activity.  Thereafter, officers witnessed an individual smoking marijuana on the front porch, saw the Defendant enter into the residence, converse in a suspicious manner with another man as they approached, and noticed the Defendant close and bolt the front door as the officers drew even closer.  The Defendant then refused to answer the door after repeated knocks from Agent Manns.  Collectively, these facts alone constituted sufficient probable cause to justify the issuance of a search warrant.

**IV.  WAVE officers relied in objective good faith on a facially valid warrant.**

Evidence obtained following the execution of the search warrant at the Defendant's residence was derived from WAVE officers' good faith reliance on a facially valid search warrant. Courts will not suppress evidence when a police officer relies in objective good faith on a faulty, but facially valid search warrant.  *United States v. Leon*, 468 U.S. 897, 926 (1984); *see also United States v. Dickerson*, 975 F.2d 1245, 1249 (7th Cir. 1992) ("evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant will not be suppressed").  The question is whether "a reasonable well-trained officer would have known that the search was illegal despite the magistrate's authorization."  Id., quoting *Leon*, 468 U.S. at 922; see also *United States v. Carter*, 999 F.2d 182, 185 (7th Cir. 1993).  Law enforcement officers are charged with "knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to those principles."  *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir.

2002); *United States v. Brown*, 832 F.2d 991, 995 (7th Cir. 1987).

On June 30, 2010, WAVE officers had an objectively reasonable belief that the search warrant issued by Judge Cason was legal.  WAVE officers would have had no reason to believe that their entry onto the Defendant's property and use of a drug-sniffing dog, included as probable cause in the search warrant, could be deemed an illegal Fourth Amendment search.  This search took place on June 30, 2010, nearly three years before the Supreme Court's ruling in *Jardine*. *Leon*, 468 U.S. at 952 ("But in situations where police officers reasonably (but mistakenly) believe that their planned conduct satisfies Fourth Amendment requirements….because their conduct is only later determined to be invalid as a result of a subsequent change in the law…then such officers will have no reason to refrain from conducting the search and the exclusionary rule will have no effect")   Unlike the law enforcement officers in *Jardine*, WAVE officers entered onto the side and rear of the Defendant's property to prevent the commission of a crime, as well as the Defendant's potential escape and discarding of evidence.  Also, with Judge Cason not having to consider the ruling in *Jardin*e at the time of authorization, WAVE officers would have had no reason to believe that their ensuing search was improperly authorized.

Because the officers' entry onto the Defendant's property and use of a drug-sniffing dog were valid, the items seized from the Defendant's residence, as well as the post-arrest statements made by the Defendant, are admissible.   For these reasons, the United States respectfully prays that the Court deny Defendant's Motion to Suppress Evidence and Statements.

Respectfully submitted,

DANIEL T. KAPSAK

Assistant United States Attorney


*/s/ Daniel T. Kapsak*
DANIEL T. KAPSAK
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL 62208
Tel: (618) 628-3700
Fax: (618) 628-3772
Email: Dan.Kapsak@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 12-CR-30142-MJR |
| ) | |
| **ANTOINE T. THOMAS,** ) | |
| ) | |
| **Defendant.** ) | |

### Certificate of Service

I hereby certify that on May 31, 2013, I caused to be electronically filed **Government's Response In Opposition To Defendant's Motion To Suppress** with the Clerk of Court using the CM/ECF system which will send notification to all attorneys of record.

    Respectfully submitted,

    STEPHEN R. WIGGINTON
    United States Attorney


    */s/ Daniel T. Kapsak*
    DANIEL T. KAPSAK
    Assistant United States Attorney
    Nine Executive Drive
    Fairview Heights, IL 62208
    Tel: (618) 628-3700
    Fax: (618) 628-3730
    Email: Dan.Kapsak@usdoj.gov